UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM KIPPLE, PAUL MILLER, AND
ALL OTHERS SIMILARLY SITUATED,

                                        Plaintiffs          DECISION AND ORDER

-vs-
                                                            09-CV-6494 CJS

MONROE COUNTY, NEW YORK,

                                        Defendant
_____

APPEARANCES

For Plaintiff:            Matthew J. Fusco, Esq.
                          Robert G. McCarthy, Esq.
                          Chamberlain, D'Amanda, Oppenheimer & Greenfield, LLP
                          1600 Crossroads Building
                          Two State Street
                          Rochester, New York 14614

For Defendants:           Daniel J. Moore, Esq.
                          Kyle W. Sturgess, Esq.
                          Harris Beach PLLC
                          99 Garnsey Road
                          Pittsford, New York 14534

INTRODUCTION

        This is an action pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 26

U.S.C. § 201 *et seq.*, to recover overtime pay that Monroe County allegedly failed to pay to

firefighters employed at the Greater Rochester International Airport.  Defendant maintains

that the firefighters are exempt from the FLSA's overtime pay requirements.  Now before

the Court are Plaintiffs' application for summary judgment [#28] and Defendant's cross-

motion [#35] for summary judgment.   For the reasons that follow, Plaintiffs' motion is

denied, Defendant's cross-motion is granted, and this action is dismissed.

1

BACKGROUND

The primary issue before the Court is whether Plaintiffs are entitled to overtime pay under the FLSA when they work more than forty hours per week, or whether they are partially exempted by a section of the statute pertaining to firefighters.  On this point, it is well settled that "[s]ubject to certain exceptions, the FLSA mandates overtime pay for employees who work more than 40 hours per week." *Mullins v. City of New York*,  653 F.3d 104, 106 (2d Cir. 2011) (citing 29 U.S.C. § 207(a)(1)).  However, the FLSA  partially exempts certain employees from the overtime requirements, including certain firefighters. Specifically, the statute exempts employees engaged in "fire protection activities." 29 U.S.C.A. § 207(k) (West 2012) (emphasis added); see also, *Foley v. City of Buffalo*, No. 06–CV–49S, 2011 WL 3176455 at *2 (W.D.N.Y. Jul. 27, 2011). ("This section allows firefighters to work up to 212 hours in a twenty eight-day "work period" before becoming eligible for overtime pay.") (citing 29 C.F.R. § 553.201).[1]   The FLSA defines an "employee in fire protection activities" as follows:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who--
>
> (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and *is employed by a fire department of a municipality, county, fire district, or State*; and
>
> (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

---

[1] According to Defendant, its practice was to pay overtime "if the firefighters worked more than 121 hours during the 16 day work cycle." Susan Walsh Affidavit ¶ 42.

2

29 U.S.C.A. § 203(y) (West 2012) (emphasis added).  The regulations interpreting the FLSA reiterate that an employee in fire protection activities must be "employed by a fire department of a municipality, county, fire district, or State." 29 C.F.R. § 553.210 (West 2012) (emphasis added).

Here, there is no dispute that Plaintiffs perform job duties that would fall within the statutory and regulatory definitions set forth above.  Similarly, there is no dispute that Plaintiffs are employed by a county.  Instead, the issue is whether Plaintiffs are "employed by a fire department" within the meaning of § 203(y), and if not, whether Defendant willfully failed to pay Plaintiffs the correct amount of overtime pay.  On these points, unless otherwise noted the following are the undisputed facts of this case.

Defendant does not maintain a county-wide  fire department.  Instead, firefighting services within Monroe County are generally provided by the various municipalities, towns, and villages within the County which maintain their own fire departments.  Defendant maintains an Aviation Department, which is responsible for day-to-day operations at the Greater Rochester International Airport ("the airport").  The Aviation Department includes a "Crash/Fire Rescue Division," also referred to as  the "Airport Fire Rescue Department," which is responsible for providing firefighting and rescue duties at the airport.  The Airport Fire Rescue Department also provides certain limited training, firefighting, and emergency services outside of the airport, pursuant to Monroe County's mutual aid plan.  Plaintiffs are current or former employees of the Airport Fire Rescue Department.  Fire trucks used by the Airport Fire Rescue Department identify them as being part of the "Greater Rochester International Airport Fire Department."  Similarly, Plaintiffs' badges and identification cards indicate that Plaintiffs are part of the "Airport Fire Department."  Employees of the Airport

Fire Rescue Department are members of a labor union, the Monroe County Firefighters Association, I.A.F.F., Local 1636 ("the Union").

The airport firefighters are paid on an hourly basis, and receive overtime pay when their total working hours for a work period exceed the threshold limit set by the Department of Labor's regulations at 29 C.F.R. § 553.231.[2] Defendant maintains that the fire fighters are otherwise exempted from the FLSA's overtime requirements by 29 U.S.C. § 207(k).

In 2005, the County and the Union reached an impasse during negotiation of a new collective bargaining agreement. The Union filed a request with the New York State Public Employees Relations Board ("PERB"), seeking binding "interest arbitration" under New York Civil Service Law § 209(4). Significantly, such "interest arbitration" was only available to certain entities, including "officers or members of *any organized fire department*, or *any unit of the public employer which previously was part of an organized fire department whose primary mission includes the prevention and control of aircraft fires*." Civil Service Law § 209(4) (emphasis added). In that regard, the Union maintained that the Airport Fire Department was an "organized fire department" within the meaning of Civil Service Law § 209(4). However, the County opposed the Union's request for binding arbitration by arguing that the Airport Fire Department was not an "organized fire department" within the meaning of § 209(4). Specifically, in a document submitted to PERB entitled "Response to Petition for Compulsory Interest Arbitration (Docket No. [#28]), the County stated:

---

[2] *See*, 29 C.F.R. § 553.231(b): "Section 7(k) permits public agencies to balance the hours of work over an entire work period for law enforcement and fire protection employees. For example, if a firefighter's work period is 28 consecutive days, and he or she works 80 hours in each of the first two weeks, but only 52 hours in the third week, and does not work in the fourth week, no overtime compensation (in cash wages or compensatory time) would be required since the total hours worked do not exceed 212 for the work period. If the same employee in fire protection activities had a work period of only 14 days, overtime compensation or compensatory time off would be due for 54 hours (160 minus 106 hours) in the first 14 day work period."

There is no specific definition of an 'organized fire department' in the Civil Service Law; however, the term 'organized fire department' generally refers to various fire departments and fire districts which are organized under the laws of the State of New York to provide fire protection services to specific towns, villages, and other municipalities within the State.

The [Union] employees, although they are employees of the County, *are not members of an organized fire department because they do not provide fire protection services to County residents.*  Rather, they are employed by the County to provide fire protection services at the Greater Rochester International Airport, an airport authority, which is owned by the County but controlled by the Monroe County Airport Authority.

***

Because the airport firefighters serve a discrete function in terms of fire protection *and do not provide fire protection to County residents in general as members of an organized fire department*, the drastic measure of compulsory arbitration which is contrary to the spirit of the Taylor Law is not available to this group of employees.

*Id*. at pp. 52-53, 55[3] (emphasis added).

As noted above, Civil Service Law § 209(4) pertains to "any organized fire department, *or any other unit of the public employer which previously was a part of an organized fire department whose primary mission includes the prevention and control of aircraft fires*." (emphasis added).[4]  It is undisputed that this italicized language, known as the "Hancock Airport Amendment," pertains only to certain firefighters employed at the Hancock International Airport in Syracuse, who were formerly part of the Syracuse City Fire Department. *See*, [#28] at pp. 73, 79.  Section 209(4) therefore excludes airport firefighters

---

[3] Additionally, the County filed an improper practice charge with PERB  against the Union, alleging that the Union had committed an improper practice by filing a request for interest arbitration when it was not an "organized fire department." *Id*. at 59.  PERB denied the improper practice charge. *Id*. at 61.

[4] It is undisputed that Plaintiffs in this action were never previously part of an organized fire department apart from the airport fire department.

from its coverage, except those employed at Hancock Airport in Syracuse.  This interpretation is underscored by the fact that New York legislators have unsuccessfully attempted to amend § 209(4) to cover other airport firefighters. *See*, Exhibit B to Kipple Affidavit, Ex. E, [#28] at pp. 72-76.  For example, in 2004, legislators passed legislation expanding § 209(4) to cover

> officers or members of any organized fire department, or any other unit of the public employer which previously was a part of an organized fire department whose primary mission includes the prevention and control of aircraft fires, <u>or any other unit of a public authority which performs firefighting duties</u>.

*Id*. (proposed amendment underlined).  One sponsor of the bill indicated that the purpose of the amendment was to "include fire fighters that are employed at airports or other facilities by a public employer within the class eligible for binding arbitration." *Id*., [#28] at p. 76.  However, then-Governor George Pataki vetoed the legislation. *Id*. at p. 73.

On May 6, 2006, PERB's Director, Richard Curreri ("Curreri"), issued a written decision denying the Union's request for interest arbitration.  As part of that decision, Curreri noted that the record before him consisted of "assorted papers, memoranda and exhibits submitted by the parties." *Id*. at 78. In his decision, Curreri found that Union members clearly performed firefighting duties, but that "status as a fire fighter" did not in and of itself result in coverage by Civil Service Law § 209(4). *Id*. at 78.  Curreri concluded that Union members were not members "of an organized fire department of the County." *Id*. at 79.  In that regard, Curreri found that the County did not maintain an organized fire department. *Id*. ("The record reveals that the fire fighters at issue are employed not within a County fire department, but within the County's Department of Aviation, which has far broader responsibilities than airport fire control.").  Curreri further found that Plaintiffs were not

covered by the Hancock Airport Exception. *Id*.

The Union filed exceptions to Curreri's determination.  In opposition to those exceptions, the County reiterated that the Union members were not part of a County fire department:

> Pursuant to the Civil Service job descriptions, *airport fire fighters are employed to work within the County's Aviation Department, not within a County Fire Department.  In fact, the relevant provisions of the County Charter do not include a County Fire Department*, but rather, the Charter provides for a Department of Aviation.  The powers and duties of the Department of Aviation are much broader than simply aircraft/airport fire fighting and include a Director and Deputy Director of Aviation responsible for the construction, maintenance and overall operation of the entire airport facility.  Fire prevention and control is only a small component of the duties and responsibilities of the Department of Aviation.

Docket No. [#28] at pp. 86-87; *see also, id*. at 90 ("[T]he [Union] is not an 'organized fire department' of the County as defined in Civil Service Law § 209(4).  Rather, the [Union] is a unit of employees with specialized duties pertaining to aircraft fires and services at the [airport]."); *id*. at 95 ("The County has proven that . . . *the airport fire fighters are by no means Monroe County fire fighters* and that the purpose of this unit of fire fighters has always been to provide specialized services at the airport.") (emphasis added).

On August 9, 2006, PERB issued a "Board Decision and Order," denying the Union's exceptions and affirming Curreri's determination. Docket No. [#28] at 104.  In describing Curreri's determination, the Board wrote:

> The Director determined that the Airport Firefighters and Fire Captains were not members of an organized fire department of the County, and therefore, were not entitled to compulsory interest arbitration under the terms of § 209(4) of the Act *because the County did not maintain an organized fire department. He found that the at-issue employees were employed not by a fire department but within the County's Department of Aviation.*  He further found that the

airport firefighters did not perform 'general jurisdiction' type duties such as are contemplated by the term 'organized fire department' in § 209(4) of the Act.

*Id*. at 105 (emphasis added).   The Board then affirmed Curreri's determination in all respects.

## ANALYSIS

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).   A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).   Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

In this action, Plaintiffs maintain that Defendant is collaterally estopped by the PERB decision from arguing that Plaintiffs are "employed by a fire department" within the meaning of FLSA § 203(y).   In that regard, another court in this district recently set forth the applicable law concerning the collateral estoppel effect of an administrative determination by PERB:

"When a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (quoting *Utah Constr. & Mining Co.*, 384 U.S. 294, 422, 86 S.Ct. 1545, 1560 (1966)). It is well established that "PERB acts in a quasi-judicial capacity," given it's power to conduct hearings in which it administers oaths, examines witnesses and documents, takes testimony, receives evidence, and issues subpoenas. *Scott v. Goodman*, 961 F.Supp. 424, 432 (E.D.N.Y.1997); N.Y. Civ. Serv. § 205(5)(k); *O'Connor v. Mazzulo*, 536 F.Supp. 641, 643 (S.D.N.Y.1982); *Perry v. Metro. Suburban Bus Auth.*, 390 F.Supp.2d 251, 265 (E.D.N.Y.2005.)

"Under New York law, a state agency determination is given preclusive effect in a subsequent state court proceeding only when, *inter alia*, the identical issue has been decided in the prior action." *Leventhal v. Knapek*, 266 F.3d 64, 72 (2nd Cir.2001) (internal quotation marks and citations omitted). An issue is decided when it was "actually decided" by the administrative agency and "necessary to support a valid and final judgment on the merits." *Beechwood v. Leeds*, 436 F.3d 147, 153 (2nd Cir.2006). [T]he party asserting issue preclusion . . . [has] the burden of showing the identical issue was necessarily decided in a previous case. *Kaufman [v. Eli Lilly and Co.]*, 65 N.Y.2d [449,] 456, 492 N.Y.S.2d 584, 482 N.E.2d 63 [(1985)].

*Gemerek v. Buffalo Sewer Authority*, No. 99–CV–0879S, 2011 WL 3047737 at *6 (W.D.N.Y. Jul. 25, 2011).

Here, Plaintiff contends that collateral estoppel applies, since PERB actually decided that the subject fire fighters are not employed by a fire department.  Defendant responds that collateral estoppel does not apply, since there is no identity of issue between PERB's

determination and the issue in this case.[5]  More specifically, Defendant argues that there is

no identity of issue since the FLSA and New York Civil Service Law § 209(4) regulate

different aspects of the employer-employee relationship.  The Court agrees.

Although Defendant cites a number of cases in support of its position, most of them

are factually inapposite.  However, Defendant also cites a formal opinion letter from the U.S.

Department of Labor ("DOL"), Wage and Hour Division, which strikes the Court as being on-

point[7] and persuasive. *See*, DOL Wage and Hour Division Opinion Letter FLSA2009-19.[8]  In

that regard, the Court understands that, unlike regulations, agency opinion letters are

entitled to "limited deference." *Catskill Development, LLC v. Park Place Entertainment*

*Corp.*, 547 F.3d 115, 127 (2d Cir. 2008) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140,

65 S.Ct. 161 (1944) and *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655

(2000)).  Specifically, "[a]gency interpretations in opinion letters are 'entitled to respect' to

the extent they have the 'power to persuade.'" *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d

98, 105 (2d Cir. 2011) (citations omitted).  "The weight of such a judgment in a particular

case will depend upon the thoroughness evident in its consideration, the validity of its

reasoning, its consistency with earlier and later pronouncements, and all those factors

which give it power to persuade, if lacking power to control." *Mora v. New York*,  524 F.3d

---

[5]Defendant places great emphasis on the case of *Fife v. Bosley*, 100 F.3d 87 (8th Cir. 1996), an FLSA case in which the court declined to give collateral estoppel effect to a decision by a state agency. However, the Court finds that case to be factually inapposite.

[6]Defendant argues that the PERB decision should not be given collateral estoppel effect because it was a "non-adversarial," "non-trial-type proceeding." See, Def. Memo of Law [#35-6] at pp. 5-6. However, the Court disagrees.

[7]Plaintiff's maintain that the DOL opinion letter is "inapplicable," Pl. Reply Memo [#38] at p. 9, but the Court disagrees.

[8]See, http://www.dol.gov/whd/opinion/flsa.htm

183, 206 (2d Cir. 2008) (quoting *Skidmore v. Swift & Co.*).

The subject opinion letter involves a state transportation authority which employed firefighters at its local international airport.  The transportation authority asked the DOL to issue an opinion as to whether such firefighters were covered by 29 U.S.C. § 207(k).  The DOL answered that question affirmatively.  In arriving at that conclusion, the DOL reviewed the statutory definition of the term "employee in fire protection activities," set forth in 29 U.S.C. § 203(y), including the requirement that the fire fighters be "employed by a fire department."  The DOL further noted that the subject fire fighters were employed by the state transportation authority's own "fire department." FLSA2009-19 at p. 2 ("The TA employs individuals in *its* Aircraft, Rescue, and Firefighting Department stationed at the local international airport.") (emphasis added).  Therefore, the DOL was fully aware that the subject fire fighters were not members of a traditional municipal fire department.  Rather, the fire fighters were employed in a department within a much larger agency whose primary purpose was not fire fighting.  Nevertheless, DOL concluded that the firefighters were covered by § 207(k):

> The TA employs individuals in its Aircraft, Rescue and Firefighting Department stationed at the local international airport.  These employees provide services, including fire protection and prevention, dispatching, fire inspection, fire equipment inspection, rescue at an airplane crash scene or fire, and assistance to individuals in the airport needing medical attention.
> \*\*\*
> You ask whether the individuals described qualify as "employee[s] in fire protection activities under section 3(y) of the FLSA.
> \*\*\*
> You note, however, that "public agencies" that are political subdivisions of a state under section 3(x) are not mentioned in section 3(y).  You ask whether firefighters employed by the TA, a "public agency," are within the purview of section 3(y).

According to legislative history, section 3(y) "preserv[es] the intended flexibility afforded to cities and fire departments under the original Fair Labor Standards Act."  145 Cong. Rec. H11499-02 (1999) (statement of Rep. Ehrlich) (emphasis added) (copy enclosed).  It is clear that Congress did not intend to preclude public agencies that are political subdivisions of a state from utilizing the partial exemption in section 7(k).  Therefore, we believe section 3(y) includes firefighters employed by a "public agency" that is a political subdivision of a state under section 3(x).  It is our opinion that the TA's employees are "employee[s] in fire protection activities" under section 3(y) and, therefore, qualify for the partial overtime exemption under section 7(k).

*Id.* at pp. 2-3.   Accordingly, DOL had no trouble finding that a "fire department" within a larger public agency met the statutory definition of 29 U.S.C. § § 203(y) & 207(k).

The instant case presents an almost-identical situation to that presented in the opinion letter, except that this case involves a county aviation authority while the opinion letter concerned a state transportation authority.[9]  The Court does not view this difference as being significant.  Here, Plaintiffs are employed by the County's "Crash/Fire Rescue Division," which is also commonly referred to as  the "Airport Fire Rescue Department."  As such, Plaintiffs perform the exact same function under the exact same circumstances as the firefighters described in the opinion letter.

The Court has considered the weight that should be afforded to the opinion letter pursuant to the *Skidmore* factors set forth above, and finds that the opinion letter is persuasive and entitled to controlling weight.  In that regard, the Court finds the letter well-reasoned and consistent with 29 U.S.C. § 207(k), which recognizes that firefighters and police officers often work different hours than many other employees.  Accordingly, the

---

[9]The transportation agency's primary question was whether a state transportation authority is a "public agency" as defined in 29 U.S.C. § 203(x).  However, the second question, to which the Court refers, was whether the transportation authority's firefighters were covered by 29 U.S.C. § 207(k).

Court adopts the interpretation of § 203(y) that is contained in the DOL opinion letter. Essentially, such interpretation extends § 207(k)'s coverage to firefighters employed by fire departments within public agencies.

Significantly, the effect of such interpretation is the same as that which New York legislators attempted to achieve by amending Civil Service Law § 209(4). However, because such proposed amendment was *vetoed* by New York's Governor, Civil Service Law § 209(4) does not cover airport firefighters, while 29 U.S.C. § 207(k) does. Accordingly, PERB's determination that Plaintiffs were not part of a fire department *for purposes of Civil Service Law § 209(4)* has no collateral estoppel effect in this action. Moreover, for the reasons discussed above the Court finds as a matter of law that Plaintiffs are covered by the partial exemption in 29 U.S.C. § 207(k). Accordingly, Plaintiffs' summary judgment motion is denied, and Defendant's cross-motion for summary judgment is granted.

## CONCLUSION

Plaintiffs' application for summary judgment [#28] is denied, Defendant's cross-motion for summary judgment [#35] is granted, and this action is dismissed with prejudice.

SO ORDERED.

Dated:      Rochester, New York
              January 17, 2012

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge